**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DIVISION OF ARKANSAS**

**CURO HEALTH SERVICES, LLC d/b/a GENTIVA** — **PLAINTIFF/COUNTER-DEFENDANT**

**v.** — **CASE NO. 2:25-cv-02028-DCF**

**DEBRA SOBOLEWSKI** — **DEFENDANT/COUNTER-PLAINTIFF**

# BRIEF IN SUPPORT OF MOTION TO QUASH AND/OR FOR PROTECTIVE ORDER REGARDING DEFENDANT'S DEPOSITION NOTICES

Defendant has had a year to conduct discovery. With less than two weeks left in an already-extended discovery period, she instead served five deposition notices in a matter of days: four directed to Gentiva executives and one Rule 30(b)(6) notice containing 28 topics and roughly 50 subparts. She also demanded that the individual witnesses produce documents on that same compressed schedule.

The Court's scheduling order anticipated precisely this problem. It requires discovery to be served sufficiently before the deadline to permit a timely response. A recent decision from this District applied materially identical language to quash a similarly late and expansive Rule 30(b)(6) notice. Defendant's notices should meet the same result here. *Foam Holdings, Inc. v. Creative Foam Prods., LLC*, No. 4:23-CV-00320-KGB, 2025 WL 3252285, at *5 (E.D. Ark. Nov. 21, 2025) (quashing 30(b)(6) notice sent two weeks prior to close of discovery and containing 25 topics based in part on similar language in scheduling order).

The individual notices present an additional problem. Defendant seeks to depose the CEO, who did not participate in the events underlying this dispute, and General Counsel, whose involvement was strictly limited to providing legal advice. The Court should quash the notices. At

minimum, it should enter a protective order limiting any remaining discovery to matters that are relevant, proportional, and reasonably capable of being completed before the discovery deadline.

**Background and Good Faith Communication**

Late in the afternoon on Monday, September 21, 2026, Defendant unilaterally noticed Plaintiff for five depositions, including an Amended 30(b)(6) notice of deposition set for September 30, 2026. Defendant has noticed for depositions of David Causby, Chief Executive Officer of Gentiva; Ronald Lazas, EVP, General Counsel and Corporate Secretary of Gentiva; Tom Dolan, Chief Financial Officer of Gentiva; and Jeff Harris, Chief Information Officer of Gentiva.[1] See Notices attached hereto as **Exhibits A-D**. The notices were unilaterally set for the following dates:

- Jeff Harris—Monday, September 28, 2026, beginning at 9:00 a.m.
- Tom Dolan—Tuesday, September 29, 2026, beginning at 2:00 p.m.
- 30(b)(6)—Wednesday, September 30, 2026, beginning at 2:00 p.m.
- Ronal Lazas—October 1, 2026, beginning at 2:00 p.m.
- David Causby—October 2, 2026, beginning at 2:00 p.m.

Defendant provided just six days' notice before the first noticed deposition and just eight days' notice prior to the extensive 30(b)(6) notice. The 30(b)(6) notice includes 28 topics with approximately 50 sub-topics. In addition, each individual deposition is structured as a "Notice of Deposition Duces Tecum." Each notice includes broad requests for production of documents at the time of the deposition. Mr. Harris' includes eight production requests, Mr. Dolan's six

[1] Plaintiff's counsel has since learned that Ed Nuqui in Gentiva's IT department has first-hand knowledge of the investigation into Defendant's actions and the company's security systems and have offered both in place of Jeff Harris, who only has secondhand knowledge of the investigation as reported to him by Mr. Nuqui. Plaintiff's counsel has also offered Tom Dolan on October 2, 2026, and believes the parties agree as to this deposition.

production requests, Mr. Lazas' six production requests, and Mr. Causby's eight. Although Rule 30(b)(2) permits a deposition notice to be accompanied by a Rule 34 request, it does not permit a party to evade Rule 34's response period by attaching document demands to a deposition scheduled days later. Defendant thus seeks both testimony and substantial document production on a timetable that the Federal Rules do not provide.

At the time the notices were served to Plaintiff, there were just 13 days remaining in the discovery period previously extended by this Court in late August 2026. An overview of discovery by Defendant to date is important for this Court to understand the lacking justification for these last-minute and harassing discovery requests.

Plaintiff brought this action against Defendant on March 19, 2025, for six causes of action resulting from Defendant's refusal to return her Gentiva laptop after her termination and using that laptop to download 5,000 files from the Gentiva laptop to a personal cloud storage site. Defendant answered and filed a counterclaim that included claims for breach of contract and wrongful discharge. Plaintiff and Defendant have engaged in months of discovery. Plaintiff has already produced nine-hundred seventy-three (973) pages of production; it is currently preparing responses to Defendant's third set of requests for production, served to Plaintiff September 1, 2026. The parties exchanged written discovery in early 2026. Plaintiff identified Jeff Harris and Tom Dolan as possible witnesses in its initial disclosures and responses to discovery. Plaintiff also identified Jeff Harris as a possible non-retained expert on June 29, 2026.

On June 4, 2026, Defendant deposed Plaintiff's Vice President of Human Resources, Julie Waller. On August 5, 2026, Defendant took the deposition of Plaintiff's expert, Lance Watson. Defendant did not request or express an intent to take any additional depositions until August 11, 2026, at which point her attorney stated:

> Also, I think that I need to conduct some additional discovery in light of your expert's deposition. I would like to extend the discovery deadline which expires soon. Let me know your thoughts on an extension. I am thinking 30 days. Maybe that also gives us time to complete the Guardian review.

Discovery was set to end on August 20, 2026. On August 19, 2026, Defendant moved for an extension of time to complete discovery, representing this as necessary primarily to complete forensic review of the computer records and Gentiva laptop. *See* Doc. 36 at 4 – 5. Defendant noted that she "may need to take additional depositions in this matter" and framed this as being a result of "developments" in the case. Defendant did not, and has not, provided any context as to what additional information came to light that now necessitates five depositions, including the overly burdensome and impractical 30(b)(6) deposition. On August 24, 2026, the Court entered an order extending the discovery period from August 20, 2026, to October 4, 2026.[2]

Then, on August 28, 2026, Defendant's Counsel stated for the first time in an email that "I wanted to let you know that I do want to depose Jeff Harris based upon these Supplemental Expert Disclosures." Defendant's counsel also indicated that Defendant may want to take a supplemental deposition of Lance Watson, but no decision had been made on that yet. No proposal for a date or request for dates was made in this email. In addition, Jeff Harris had already previously been disclosed as a potential non-retained expert in Plaintiff's initial expert disclosures in June.

Also on August 28, 2026, Defendant served Plaintiff's counsel with a Notice of 30(b)(6) Deposition and Exhibit A ("Notice") unilaterally setting the deposition for September 10, 2026, and designating topics to be addressed during the deposition, attached hereto as **Exhibit E**. The original Notice consisted of twenty-eight (28) proposed topics with a total of fifty (50) sub-parts. No other notices of deposition were served on August 28th. On August 31, 2026, Plaintiff's counsel

---

[2] Plaintiff did not have an opportunity to respond to the motion before the Court entered its order.

sent Defendant's counsel the letter attached as **Exhibit F**, requesting to confer with Defendant's counsel regarding the Notice.

The parties' counsel conferred briefly on September 3, 2026, by Zoom. During that call counsel for Plaintiff explained that it had several issues with the proposed 30(b)(6) topics, including the scope of the topics and the timeframe to complete the deposition. Plaintiff offered to find dates for non-30(b)(6) depositions for requested deponents. At that time, Plaintiff was only aware of Defendant's possible interest in taking the individual deposition of Jeff Harris, the company's Chief Information Officer. However, Plaintiff's counsel does not recall any discussion of Mr. Harris's deposition during this call. Defendant's counsel did not indicate during that call whether Defendant intended to move forward with the 30(b)(6) or preferred to schedule individual depositions.

On Friday, September 11, at 5:13 p.m. Defendant's counsel sent Plaintiff's counsel a lengthy email primarily pertaining to Defendant's perspective on the case and settlement demand ahead of the settlement conference set for September 18. The end of the email stated "I also requested the deposition of Jeff Harris on August 28, and I have not received dates for his deposition." This was the first request for dates for Mr. Harris's deposition that Plaintiff is aware of. The end of the email also indicated for the first time that Defendant desired to take the deposition of Tom Dolan, Ronald Lazas, and David Causby.

On September 18, 2026, Plaintiff's counsel sent Defendant's counsel the letter attached as **Exhibit G,** listing its objections to the proposed list of topics in the original Notice, including each disputed topic. Defendant did not respond to these objections, nor did Defendant attempt to engage in any discussion of these objections whatsoever

Rather, on September 21, 2026, Defendant served Plaintiff's counsel with the Amended Notice of 30(b)(6) Deposition and Exhibit A ("Amended Notice") designating topics to be addressed during the deposition, attached hereto as **Exhibit H**. Exhibit A to the Amended Notice was identical to Exhibit A to the Notice, containing the same twenty-eight (28) proposed topics with a total of fifty (50) sub-parts. In her Amended Notice, Defendant merely moved the date of the deposition from September 10 to September 30. Defendant also served the notices of deposition for Mr. Causby, Mr. Lazas, Mr. Dolan, and Mr. Harris on the 21st.

As to the 30(b)(6) notice, each topic to which Plaintiff now objects is listed below with Plaintiff's reason for objections. Plaintiff asks that this Court enter a protective order, requiring Defendant to submit a new list of topics with proper parameters to ensure all topics are within the scope of discovery for this matter, are tenable as 30(b)(6) topics that a witness(es) could adequately prepare for, and will not cause undue expense and burden to Plaintiff. With respect to the individual deposition notices, Plaintiff asks that this Court quash these notices in their entirety for violating this Court's scheduling order and the Apex Doctrine.

**Legal Standard**

A federal district court has broad discretion with regard to discovery motions. *See United States v. Washington,* 318 F.3d 845, 857 (8th Cir.2003). Federal Rule of Civil Procedure 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case ...." Despite Rule 26's liberal scope, it does not extend to irrelevant matters, situations where compliance is unduly burdensome, or "where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information." *Miscellaneous Docket Matter #1 v. Miscellaneous Docket Matter #2*, 197 F.3d 922, 925 (8th Cir. 1999). A party may move for an

order protecting disclosure or discovery, upon a showing of good cause. *See* Fed. R. Civ. P. 26(c). The party moving for the protective order has the burden to demonstrate good cause for issuance of the order to protect the party from "annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1)

As the Eighth Circuit has held, although the "standard of relevance in the context of discovery is broad[] . . ., this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery." *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992). A court has several solutions to overbroad requests or topics and requests that result in annoyance, embarrassment, oppression, or undue burden or expense. These include forbidding the discovery, specifying terms for the disclosure, prescribing a different discovery method, forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1)(A)-(D). Rule 26(c) authorizes the Court, for good cause, to protect a party or person from "annoyance, embarrassment, oppression, or undue burden or expense," including by forbidding the discovery or limiting its scope. Fed. R. Civ. P. 26(c)(1)(A), (D).

In addition, this Court's scheduling order specifically requires that "[a]ll discovery requests and motions must be filed sufficiently in advance of the discovery deadline set forth in this order to allow for a timely response."

Defendant has served four notices of deposition, with four sets of requests for production, and a notice for a 30(b)(6) deposition of a company representative of Plaintiff just 13 days before the close of discovery. Rule 30(b)(6) requires that a notice for deposition of a corporate defendant "must describe with reasonable particularity the matters for examination." Such topics are subject to rules governing scope of discovery. *See, e.g.*, *Monohon v. BNSF Ry. Co.*, No. 414CV00305JAJSBJ, 2015 WL 12856122, at *3 (S.D. Iowa Oct. 9, 2015) (holding, among other

things, that Plaintiff's 30(b)(6) topics were overbroad and requiring Plaintiff to narrow time, scope, and geographic region).

**Topics and Objections**

## I. Defendant's Last-Minute Deposition Notices Violate the Scheduling Order

### A. The Individual Deposition Notices Must Be Quashed Due to Their Untimeliness and Improper Requests for Production of Documents

Defendant's notices of deposition provide just six days' notice for the first deposition and 10 days' notice for the last deposition, four and eight business days respectively, to depose the highest-ranking officers of the company. They also include requests "duces tecum" for production of documents. Defendant has had more than ten months to seek these depositions and documents, yet has chosen to wait until the 45-day extension of discovery provided by this Court. Defendant cannot demonstrate a reason that she "unexpectedly" needs to depose these four individuals on such short notice, other than her own failure to timely engage in discovery.

This court's scheduling order requires that "[a]ll discovery requests and motions must be filed sufficiently in advance of the discovery deadline set forth in this order to allow for a timely response." Defendant waited until the closing days of discovery to notice four executives, demand accompanying document productions, and require Gentiva to prepare a corporate representative on dozens of subjects. Whatever Defendant's purpose, the resulting burden is substantial and unnecessary. *See, e.g., Foam Holdings, Inc. v. Creative Foam Prods., LLC*, No. 4:23-CV-00320-KGB, 2025 WL 3252285, at *5 (E.D. Ark. Nov. 21, 2025) (quashing 30(b)(6) notice sent two weeks prior to close of discovery and containing 25 topics based in part on similar language in scheduling order).

For the reasons set forth above, the Court should quash the notices of deposition of Mr. Causby, Mr. Lazas, Mr. Dolan, and Mr. Harris.

**B. Defendant's 30(b)(6) Notice Must be Quashed for Violating this Court's Scheduling Order and Subjecting Plaintiff to Undue Burden Less Than Two Months Before Trial.**

Defendant's notice requires Gentiva, in a matter of days, to identify and prepare witnesses on 28 topics and roughly 50 subparts spanning much of the litigation. Several topics would require Gentiva to reconstruct information across thousands of documents, numerous employees, prior proceedings, and third parties. One topic alone asks Gentiva to address which of approximately 5,000 downloaded files contains or may contain a trade secret. Preparing a witness to testify for the corporation on that scope of information cannot reasonably be accomplished in the few days Defendant allowed or the days remaining in the discovery period.

Defendant had more than 10 months to seek a 30(b)(6) deposition on these topics. Nothing within the notice is a new "development" nor did it emerge as part of any recent deposition, as represented to this Court by Defendant. The topics seek broad information about the facts pertaining to the original claims and issues in this case, which Defendant has been aware of since March 2025. *See Foam Holdings, Inc. v. Creative Foam Products, LLC*, No. 4:23-CV-00320-KGB, 2025 WL 3252285, at *5 (E.D. Ark. Nov. 21, 2025) (quashing 30(b)(6) notice sent two weeks prior to close of discovery and containing 25 topics). In *Foam Holdings*, the court addressed a nearly identical situation in which a party served a 30(b)(6) notice two weeks prior to the close of discovery that sought broad information on 25 topics about the claims in the case. The court held that the party seeking late discovery had violated the court's scheduling order which stated "[a]ll discovery requests and motions must be filed sufficiently in advance of the discovery deadline set forth in this order to allow for a timely response." *See id.*

The Court's scheduling order in this matter states the same: "All discovery requests must be propounded sufficiently in advance of the discovery deadline to allow for a timely response." On this basis alone, Defendant's 30(b)(6) notice should be quashed.

## II. The Notices Directed to Causby and Lazas Independently Warrant Protection Because Neither has Unique Firsthand Knowledge that is Not Protected by the Attorney-Client Privilege.

Relying on Rule 26(c), courts have prohibited or limited depositions of high-level executives who has no unique personal knowledge of the facts at issue. *See Van Den Eng v. Coleman Co.*, 2005 U.S. Dist. LEXIS 40720 (D. Kan. 2005); *Evans v. Allstate Ins. Co.*, 216 F.R.D. 515, 518-19 (N.D. Okla. 2003) (citing *Folwell v. Hernandez*, 210 F.R.D. 169 (M.D.N.C. 2002) and *Baine v. Gen. Motors*, 141 F.R.D. 332 (M.D. Ala. 1991)); Crown Cent. Petroleum Corp. v. Garcia, 904 S.W.2d 125, 128 ( 1995). 332 (M.D. Ala. 1991)); *Crown Cent. Petroleum Corp. v. Garcia*, 904 S.W.2d 125, 128 (Tex. 1995). This legal rule is often called the "apex doctrine."

Courts applying the apex doctrine consider whether the executive has unique or superior knowledge and whether the party seeking the depositions has pursued less burdensome sources for the same information. *Wal-Mart Stores, Inc. v. Vidalakis*, 2007 U.S. Dist. LEXIS 2007 (W.D. Ark. 2007). "Virtually every court that has addressed deposition notices directed at an official at the highest level or 'apex' of corporate management has observed that such discovery creates a tremendous potential for abuse or harassment." *Celerity, Inc. v. Ultra Clean Holding, Inc.*, No. C 05-4374MMC(JL), 2007 WL 205067, at *3 (N.D. Cal. Jan. 25, 2007).

Neither Mr. Causby nor Mr. Lazas have unique firsthand knowledge of the facts at issue here. Neither supervised Ms. Sobolewski, made the decision to terminate her employment, or took part in the investigation that preceded her termination. The sole extent of Mr. Lazas's involvement was in his capacity as Gentiva's General Counsel and would implicate privileged communications.

Defendant has already deposed Julie Waller, Gentiva's Vice President of Human Resources, who was directly involved in the investigation and testified about it. Defendant has not identified any information uniquely known to either Mr. Causby or Mr. Lazas that could not be obtained from witnesses with direct knowledge or through less burdensome discovery.

The result in *Bank of the Ozarks v. Cap. Mortg. Corp.*, No. 4:12-MC-00021 KGB, 2012 WL 2930479, at *1 (E.D. Ark. July 18, 2012), is instructive. There, the Defendants sought to depose George Gleason, the Chairman of the Board and Chief Executive Officer of Bank of the Ozarks. The Court quashed the subpoena and required the Defendant to make a good-faith effort to pursue less burdensome avenues for obtaining the information sought. *Id.* at *3.

Neither party identified Mr. Lazas as a potential witness or person with knowledge of this matter until this notice of deposition. Defendant identified Mr. Causby in response to Plaintiff's first set of interrogatories and indicated that Mr. Causby had "knowledge of the policies, procedures and practices" of Gentiva. That generic description does not identify any unique knowledge bearing on the claims or defenses in this case, much less information unavailable from Ms. Waller or another lower-level witness.

Based on the requests for production included with the notices, it appears that Defendant is simply seeking additional information regarding the investigation that led to her discharge. But Mr. Causby had no personal involvement in this investigation. Defendant has already deposed Ms. Waller, who was directly involved in the investigation and testified about her firsthand knowledge of it.

Defendant has not shown that either executive possesses unique information or that the same information cannot be obtained from witnesses with direct knowledge. Requiring Gentiva's CEO and General Counsel to sit for depositions under these circumstances would impose burden

without yielding information unavailable from less intrusive sources. The Court should therefore quash the notices directed to Mr. Causby and Mr. Lazas.

## III. If the Court Permits a 30(b)(6) Deposition, It Should Narrow the Dispute Topics.

### A. Topics 1 – 5

Topics 1 – 5 in Defendant's Topics for 30(b)(6) attached as **Exhibit H** are overbroad, unduly burdensome, and seek privileged information or legal conclusions. Defendant seeks testimony on every document that does or may contain trade secret information among the 5,000 documents transferred from the Gentiva laptop in Sobolewski's possession. Defendant had 10 months to seek this testimony, but instead chose to unilaterally notice a 30(b)(6) deposition just two weeks before the close of discovery. Defendant's notice would require Plaintiff to effectively prepare for trial on its trade secret claim in a matter of days.

In its September 18, 2026, letter, Plaintiff proposed conferring on a small sample set of documents that it contends contain trade secret information, including those already identified in its discovery responses to Defendant. Defendant ignored this request and has refused to narrow or limit the scope of its overly broad and burdensome request. Accordingly, Plaintiff asks this Court to provide clear parameters around 1 – 5 for the 30(b)(6) deposition.

### B. Topics 8—9

Defendant once again seeks testimony on an expanse of information outside the proper scope of a 30(b)(6) deposition: every person outside Gentiva who may have had knowledge of each trade secret in the 5,000 files and each person in the industry who is aware of each trade secret or could have ascertained it.

These requests would require Gentiva to interview every employee of its company who may have access to the alleged trade secret information to determine whether any disclosure,

whether authorized or unauthorized, has occurred. The information Defendant seeks is impossible for any representative of Plaintiff to confidently and accurately testify to without first conducting months of investigation and preparation.

Further, some of the information is simply outside the possession, custody, or control of Plaintiff. Gentiva cannot reasonably know what all "persons in the relevant industry" could know or ascertain about its trade secrets and intellectual property without somehow speaking to each person who works or ever has worked in hospice and home health care.

**C. Topics 11—12**

Defendant seeks information not related to company information, policies, procedures and decisions, which is thus improperly submitted as a 30(b)(6) topic. In fact, the information Defendant seeks is already in the possession of Defendant—namely what actions she has taken with the company information in her possession. The parties have been engaged in a forensic review to make these determinations, which is ongoing. Plaintiff has also made discovery requests to Defendant regarding her current position as a Vice-President of Revenue Cycle at a competing company. Defendant has completely refused to provide any information and records responsive to these requests, which Plaintiff requires to determine how Defendant misappropriated Gentiva's confidential information and records (apart from the unauthorized transfer from Gentiva's laptop).

Defendant's Amended Notice also includes the statement in topic 12 that "damages must be apportioned on a per trade secret basis and may not be presented solely on an aggregate or consolidated basis." That "instruction" has no place in a 30 (b) (6) notice.

**D. Topic 14**

Defendant is seeking testimony, without any temporal limitation, concerning, "all prior lawsuits, arbitrations, administrative proceedings, cease and desist demands, or settlements" in

which Gentiva asserted claims similar to those alleged in its Complaint against Plaintiff—including misappropriation of trade secrets, intellectual property infringement, and breach of confidential obligations.

As drafted, Topic 14 is substantially overbroad and disproportionate. It is unlimited in time, geography, business unit, or factual similarity to this case and would require Gentiva to identify and review an unknown number of matters across the company. The topic also sweeps in attorney-client communications, attorney work product, settlement information, and materials subject to confidentiality obligations. Preparing a corporate representative to testify fully and accurately about that universe of matters would require substantial investigation that cannot reasonably be completed within the remaining discovery period. Plaintiff therefore requests that the Court limit Topic 14 to prior matters that are reasonably similar to the claims at issue here and impose appropriate temporal and subject-matter limits.

**E. Topic 15**

This request is overbroad, unduly burdensome, and disproportionate to the needs of the case. It requires Gentiva to prepare a corporate representative to testify about the actions, communications, reports, conclusions, and investigative work of every employee and third-party contractor involved in the investigation of Ms. Sobolewski. That breadth would require Gentiva to reconstruct the work of multiple individuals and entities, some of whom acted in distinct roles and possessed different information.

Topic 15 also sweeps in matters protected by the attorney-client privilege and work-product doctrine, as well as work performed by Gentiva's retained forensic expert. Gentiva has already made the disclosures required by Rule 26 concerning that expert, and Defendant has deposed him. A Rule 30(b)(6) notice should not be used to obtain a second examination of expert

work through a corporate representative or to require Gentiva to disclose privileged aspects of its investigation. Plaintiff therefore requests that the Court limit Topic 15 to nonprivileged factual information concerning the company's investigation that is not duplicative of discovery already taken from Gentiva's expert or other witnesses.

**F. Topics 22—25**

Topics 22–25 are overbroad and unduly burdensome as drafted. Each requires Gentiva to identify "all" information within a broad category: the policies and practices used to protect information on Ms. Sobolewski's computer; every inspection performed after the computer was returned and every person involved; every instance in which Gentiva remotely accessed the computer or its contents while it was in her possession; and every hardware, software, system, application, device, agent, or other mechanism used to prevent files from being transferred, copied, downloaded, or synchronized.

These topics contain no meaningful limitation on time, system, personnel, or subject matter. Preparing a corporate representative to testify comprehensively about every security control, inspection, access event, and technical mechanism potentially touching Ms. Sobolewski's computer would require Gentiva to reconstruct information from multiple custodians and technical systems on an unnecessarily broad scale with little, if any, potential relevance to the claims or defenses in this case. The repeated demand to identify "all" such information is particularly burdensome given the short time remaining in discovery.

Plaintiff does not object to reasonable inquiry concerning the security measures applicable to Ms. Sobolewski's work computer, the inspection performed after its return, or Gentiva's access to that computer insofar as those matters bear on the claims and defenses in this case. Plaintiff

requests that the Court limit Topics 22–25 to those matters and require Defendant to identify the specific time period, systems, and conduct about which she seeks testimony.

## **Conclusion**

No valid excuse exists for the late noticed depositions. Defendant is attempting to shoehorn 10 months of discovery into a two-week period. These expansive discovery requests go well beyond the representations made to this Court in Defendant's request for an extension of discovery. This Court should quash each notice on the basis that they violate the clear language of its scheduling order and would subject the Plaintiff to undue burden and harassment. Alternatively, this Court must, at a minimum, enter a protective order limiting the scope of discovery sought by Defendant. Plaintiff further requests all just and equitable relief available to it.

Respectfully submitted,

FRIDAY, ELDREDGE & CLARK, LLP
400 W. Capitol Ave., Suite 2000
Little Rock, AR 72201
Office: (501) 376-2011
Facsimile: (501) 244-5348
mmoore@fridayfirm.com
mcameron@fridayfirm.com
*Attorneys for Plaintiff*

Mike S. Moore, Ark. Bar No. 82112
Mark K. Cameron, Ark. Bar No. 2021193