**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| CURO HEALTH SERVICES, LLC<br>d/b/a GENTIVA,<br>Plaintiff/Counter-Defendant, | ) | |
| vs. | ) | CASE NO.: 2:25-cv-02028-DCF |
| DEBRA SOBOLEWSKI,<br>Defendant/Counter-Plaintiff. | ) | |

**AMENDED NOTICE OF 30(b)(6) DEPOSITION OF PLAINTIFF, CURO HEALTH SERVICES, LLC d/b/a GENTIVA**

Defendant/Counter-Plaintiff, Debra Sobolewski, by and through her attorney, Rebecca D. Hattabaugh of Ledbetter, Cogbill, Arnold & Harrison, LLP, hereby sets forth her Amended Notice to take the deposition of Plaintiff/Counter-Defendant, **Curo Health Services, LLC d/b/a Gentiva** pursuant to the Federal Rules of Civil Procedure, Rule 30(b)(1) and 30(b)(6). The deposition shall be upon oral examination by stenographic and/or audiovisual means before a duly certified court reporter present with the deponent at the date, time and location set out below, until complete. The purpose of taking this deposition is for discovery and for use as evidence as now provided for by law at the trial of the above-entitled cause.

Date and Time: **Wednesday, September 30, 2026, beginning at 10:00 a.m., Central Time**

Location: VIA ZOOM-Invite to be sent out via e-mail

Or at such other date, time, and place as may be mutually agreed upon by the parties or ordered

Exhibit H

by the Court.

Pursuant to Federal Rules of Civil Procedure 30(b)(6), Defendant/Counter-Plaintiff, Debra Sobolewski, ("Sobolewski") designates the subject matters for examination in the list attached hereto as Exhibit "A". Pursuant to Federal Rules of Civil Procedure 30(b)(6), Plaintiff/Counter-Defendant Curo Health Services, LLC d/b/a Gentiva ("Gentiva"), is required to designate one or more officers, directors, managing agents, or other persons who can sit to testify on its behalf regarding each of the topics set forth on the list attached as Exhibit "A". The designated representative(s), must be prepared to testify about all information known or reasonably available to the organization on each notice topic-not merely the designee's personal knowledge. The duty to prepare extends to information reasonably available from documents, past employees, and other sources, and Gentiva may designate more than one representative to cover the full scope of notice topics.

9/21/2026
DATED

REBECCA D. HATTABAUGH, ABA#96029
LEDBETTER, COGBILL,
ARNOLD & HARRISON, LLP
ATTORNEYS AT LAW
P.O. BOX 185
FORT SMITH, AR 72902-0185
Phone: (479) 782-7294
Fax: (479) 782-1493
e-mail: rhattabaugh@lcahlaw.com
*Attorney for Defendant/Counter-Plaintiff, Debra Sobolewski*

**CERTIFICATE OF SERVICE**

I, Rebecca D. Hattabaugh, one of the attorneys for the Defendant/Counter-Plaintiff herein, do hereby certify that on September 21, 2026, I e-mailed a true and correct copy of the above and foregoing Notice of Deposition to the following:

Mr. Mark Cameron
Mr. Michael S. Moore
Friday, Eldredge & Clark, LLP
400 West Capitol Ave., Suite 2000
Little Rock, AR 72201
mcameron@fridayfirm.com
mmoore@fridayfirm.com
*Attorneys for Plaintiff, Curo Health Services, LLC d/b/a Gentiva*

REBECCA D. HATTABAUGH

**EXHIBIT "A"**

1. The identity and detailed description of each item of information that Gentiva contends constitutes a trade secret, including for each such item:

   (a) the specific content, nature, and form of the information;

   (b) the category and type of trade secret (e.g. formula, pattern, compilation, program, device, method, technique, or process); and

   (c) how Gentiva distinguishes each alleged trade secret from information that is generally known in the relevant industry or publicly available.

2. For each alleged trade secret identified in Topic 1:

   (a) The economic value Gentiva derives, or derived from the information not being generally known and not being readily ascertainable by proper means by, others who could obtain economic value from its disclosure or use;

   (b) The competitive advantage, if any, Gentiva attributes to the information; and

   (c) The revenue, cost savings, or other financial benefit Gentiva has realized from the information during the time period of the alleged misappropriation to present.

3. For each alleged trade secret identified in Topic 1, the money, effort, and resources Gentiva expended to acquire, develop, compile, and maintain the information, including the identity of persons involved in its development, the approximate timeframe of development, and any third party contributions.

4. For each alleged trade secret identified in Topic 1, the manner in which Gentiva used the information in its business operations during the time period from the alleged misappropriation to present, including the products, services, processes, or business functions to which the information relates.

5. The identity and detailed description of each item of intellectual property that Gentiva contends was misappropriated, infringed, or wrongfully acquired by Defendant, including for each such item:

   (a) The nature and scope of the claimed intellectual property right;

   (b) Any registration, application, or other formal documentation of the right; and

   (c) The relationship, if any, between each item of intellectual property and any alleged trade secret.

6. For each alleged trade secret identified in Topic 1, all steps and measures Gentiva took to maintain the secrecy of the information, including, but not limited to:

   (a) physical security measures at Gentiva's facilities;

   (b) electronic and cybersecurity safeguards, including access controls, encryption, password protections, and monitoring;

   (c) confidentiality, non-disclosure and restricted access agreements;

   (d) policies restricting the copying, transmission or removal of the information;

   (e) limitations on the number and identity of persons with authorized access to the information; and

   (f) Any other protective steps, and the reasons for each such measure

7. For each alleged trade secret and item of intellectual property, the basis for Gentiva's claim of ownership, including:

   (a) Whether the information was developed internally by Gentiva's employees, acquired from third parties, or jointly developed;

   (b) Any assignments, transfers, licenses, or other conveyances affecting ownership; and

   (c) all agreements (including employment agreements and I.P. assignment agreements) under which Gentiva claims rights in the information.

8. For each alleged trade secret identified in Topic 1, all instances during the relevant time period in which the information was disclosed, shared, published, presented, or otherwise made available to persons outside of Gentiva, including but not limited to:

   (a) licensing, or sublicensing agreements;

   (b) disclosures to joint venture partners, vendors, contractors, or consultants;

   (c) publications and academic journals, trade publications, patent applications; regulatory filings, or marketing materials;

   (d) presentations at conferences, trade shows or industry events;

   (e) disclosures required by federal law;

   (f) disclosures to shareholders of Gentiva or any of its affiliated entities; and

(g) any other circumstances in which the information became known to the government, Gentiva's competitors, industry participants, its shareholders, shareholder of an affiliated entity, or the public.

9. To the extent to which the alleged trade secret or item of intellectual property is known to, or readily ascertainable by proper means by, persons in the relevant industry, including:

(a) the availability of similar or identical information in published literature, patents, open source repositories, or publicly accessible databases;

(b) the use of similar methods, techniques, or processes by Gentiva's competitors; and

(c) any independent development of the same or substantially similar information by third parties.

10. For each alleged trade secret and item of intellectual property, the specific facts and circumstances upon which Gentiva relies to contend that Sobolewski acquired or obtained the information, including:

(a) the means by which Sobolewski allegedly acquired the information (e.g., improper access, theft, breach of duty, or inducements);

(b) the date(s) on which the alleged acquisition occurred;

(c) the specific documents, electronic files, or physical materials allegedly taken, copied, or transferred; and

(d) the identity of all persons with knowledge of the alleged acquisition.

11. For each alleged trade secret and item of intellectual property, the specific facts and circumstances upon which Gentiva relies to contend that Sobolewski used, disclosed, or benefited from the information after acquiring it, including:

(a) the specific manner of alleged use or disclosure;

(b) the products, services, or business activities in which Sobolewski allegedly employed the information;

(c) any third parties to whom Sobolewski allegedly disclosed the information; and

(d) any and all evidence supporting Gentiva's contentions.

12. For each alleged trade secret identified in Topic 1, Gentiva's methodology and computation of actual damages, including:

(a) the specific losses Gentiva attributes to the alleged misappropriation of that particular trade secret;

(b) the method Gentiva used to calculate such losses;

(c) the data, assumptions, and inputs underlying the calculation; and

(d) any documents or analysis supporting the computation.

Damages must be apportioned on a per trade secret basis and may not be presented solely on an aggregate or consolidated basis.

13. The steps that Gentiva took to preserve documents and electronically stored information relevant to this action, including:

(a) the date on which Gentiva anticipated litigation or issued a litigation hold notice;

(b) the recipients of any litigation hold notice(s);

(c) the scope of the preservation obligations communicated;

(d) the custodians whose file and data were preserved;

(e) any steps taken to suspend routine document destruction or retention policies; and

(f) any known loss, destruction, or spoliation of relevant documents or data.

14. All prior lawsuits, arbitrations, administrative proceedings, cease and desist demands, or settlements in which Gentiva asserted claims of trade secret misappropriation, intellectual property infringement, or breach of confidentiality obligations against any person or entity—whether or not involving the same trade secrets or intellectual property at issue in this action—including the parties, claims asserted, forum, outcome, and any confidential settlement terms (to the extent not subject to a court ordered seal) bearing on the scope or enforceability of Gentiva's asserted rights.

15. All internal and external communications and investigations conducted by or on behalf of Gentiva regarding the alleged misappropriation, including:

(a) any internal investigation into Sobolewski's conduct;

(b) any forensic analysis of devices, systems, or accounts used by Sobolewski;

(c) communications with law enforcement regarding the alleged misappropriation; and

(d) the findings, conclusions, and reports generated from any such investigation—excluding communications protected by the attorney-client privilege or work product doctrine, for which Gentiva shall provide a privilege log.

16. All software, devices, applications, agents, or other mechanisms installed or utilized by Gentiva to protect the information which was stored on Sobolewski's work computer or any drive to which Sobolewski had access during her employment or after her employment was terminated.

17. Identification of all software, devices, applications, agents, or other mechanisms installed or utilized by Gentiva to monitor Sobolewski's work computer or any drive to which Sobolewski had access during her employment or after her employment was terminated.

18. Identification of all systems, devices, applications, programs or persons which were used to monitor Sobolewski's work computer.

19. Identification of all Gentiva employees who received information, reports, or data concerning Sobolewski's access to or activities performed on her work computer from October 28, 2024 to present.

20. The current location of Sobolewski's work computer as well as the chain of custody once said computer was returned to Gentiva.

21. All policies and procedures and practices of Gentiva concerning protection of confidential data and/or personal health information stored on employee devices.

22. Identification of the specific policies, procedures and practices which were employed by Gentiva to protect the information which was stored on Sobolewski's work computer.

23. Identification of all inspections performed by Gentiva after Sobolewski's work computer was returned to it and all persons involved in said inspections.

24. Identification of all instances in which Gentiva remotely accessed Sobolewski's work computer while it was in her possession or any of the files, data, or information which was contained thereon.

25. Identification of all hardware, software, systems, applications, devices, agents or mechanisms Gentiva installed or utilized to prevent files from being transferred, copied, downloaded, or synched.

26. Gentiva's decision to terminate Debra Sobolewski's employment and all of the reasons for said decision.

27. Gentiva's decision to deny Debra Sobolewski Severance payments pursuant to her employment agreement.

28. Gentiva's decision to deny Debra Sobolewski's right to receive previously issued profit units under her Employee Common Unit and Profit Units Agreement with Falcon Hospice, L.P.