**From:** Rebecca Hattabaugh
**To:** Mark K. Cameron; Mike S. Moore; Angela McEvoy
**Subject:** FW: invoices
**Date:** Thursday, September 3, 2026 10:46:31 AM

**CAUTION: External Email**

Mark,

Thanks for reaching out. My client has had a death in the family and is out of town this week. We have communicated about the issue, but I do not have a firm decision. Having invested over $6000 in the process and being asked for at least $4000 more, or $20,000 total, I am questioning what we are gaining from this review and whether it is necessary or will eventually net a usable result. I am also concerned that whatever information we get is likely to have to be further refined, may require additional discovery and depositions and we will not have time to conduct that discovery within our current discovery deadline to allow this case to proceed to trial as scheduled.

We have thus far gotten two reports which did not contain any usable data. I have repeatedly pointed this out, but current search parameters continue to focus on a key word search which netted 180,000 plus "hits" and then attempts to exclude the unrelated hits piece by painstaking piece. The results to date have yielded a large number of unrelated personal documents which have absolutely nothing to do with your client. Our current goal as I understand it if we continue to fund the research, is to exclude some search terms to get the documents down to a more feasible number but it appears likely that unrelated documents will still be included, there just won't be as many. Then I will have to review the documents to determine whether they actually are related to the transferred files before the data is shared with you. That is far beyond what we initially agreed to address which was only an examination limited to the transferred files to ensure their deletion, and excluding the 2000+ personal documents we had identified.

I have been trying to review our correspondence to see how we got in this predicament. I am not representing it was intentional. Based upon my review, this started with a very limited concern of yours that the files that were inadvertently transferred be deleted. We were agreeable. I offered to ensure the files were deleted, but that was not sufficient for your client. You wanted a third party to do it and proposed that your expert, Avansic take possession of my client's personal computer and delete the files with my client paying for all of the costs to do so. I questioned the cost and expressed concerns about the fact that her personal computer

Exhibit C

would have attorney-client privileged information on it as well as personal and financial information about herself and family members. Thus, I was not comfortable with turning it over to your expert for review and deletion of files and said so.

You then proposed an additional review that would include a review of data locally stored to see if the files at issue (3000 files) had been moved and to delete the relevant files. You proposed that a third party, Guardian, perform the review and ensure deletion. We agreed to pay half the cost with the understanding that review would focus on identifying and deleting the 3000 files at issue, not an entire forensic examination of my client's personal computer which she shares with her husband and an examination of all of the files which are contained on it. I understood the search parameters you prepared were consistent with the approach we had discussed. Specifically, I thought the search parameters indicated the peculiar file names that were transferred, and the computer would be searched to identify those particular files. That is clearly not how Guardian has approached it.

Have you looked at the last report? I note two things that are important in determining whether we are getting anywhere. The first is that many, many of the hits are obviously not related to the point that I question why they are coming up as hits. There are a lot of product images and online shopping information from retailers such as Amazon, Bath and Body Works, Hoka, and Walmart. There are downloads from a recipe site. It seems obvious that we are conducting a review of their internet browser history. That is not at all what I thought we were doing. Why would information pulled from the internet have any relevance to this case? It looks like my client downloaded a slow cooker recipe for pork several times about a year ago but I cannot imagine why that would be included in this examination or that you would be interested in that. It also looks like there is some research concerning a trip to the Grand Canyon and 2nd Grade Reading Comprehension Worksheets. There are a lot of images, email attachments containing coupons for home appliances and "Essential Senior Discounts." The only emails identified that were sent by my client were emails to her husband. The other email "hits" were emails sent to or from her husband. There are also a number of documents related to Lowes and Master Lock which I believe to be related to her husband's employment. The fact that these documents are being identified means the forensic review parameters are far too broad which is why the search has been and continues to be so time consuming and expensive.

Secondly, while we do see some files that I think are the files in question based upon the file names, that is no surprise and reveals nothing. We are not disputing that the files were transferred to her OneDrive. I did not find all of the 3000 files listed, which means that not only are we finding a lot of unrelated documents to wade through, the search is also not identifying all of the documents actually at issue.

More fundamentally, I think we need to distinguish between establishing that certain files may have existed on my client's personal computer and establishing the elements necessary to support the claims being asserted. So far, the report only shows that some of the files are on the computer and nothing more.

My understanding is that Gentiva contends that the files contain trade-secret information and that my client misappropriated that information. If that is the theory, I would like to understand what evidence currently exists concerning (1) the specific information Gentiva contends constitutes a trade secret; (2) the measures Gentiva took to protect that information; (3) whether and how the information was actually misappropriated; (4) whether the information was accessed, used, disclosed, transmitted, or provided to anyone; and (5) what actual loss, or other legally cognizable harm Gentiva contends resulted.

I recognize that the forensic examination may be intended to address some of these questions. However, after approximately $12,000 in forensic costs, I have not seen evidence establishing that the files were used or disclosed, that they were provided to anyone, or that my client obtained any benefit from them. Nor have I been provided with the identity of a witness who can explain why the particular files at issue constitute trade secrets or what economic value or harm is associated with them.

That distinction is important to my client. If the purpose of continuing the forensic examination is simply to determine whether additional files remain on her personal computer, without evidence suggesting that those files were actually used, disclosed, transferred, or otherwise misappropriated, I am not convinced that an increasingly broad examination of her personal computer is proportional to the issues that need to be resolved in this case.

We remain willing to do what we agreed to at the outset which is to pay one-half of the cost for someone to ensure deletion of the files allegedly transferred from her personal computer.

Rebecca

---

**From:** Mark K. Cameron <mcameron@fridayfirm.com>
**Date:** Monday, August 31, 2026 at 8:11 AM
**To:** Rebecca Hattabaugh <rhattabaugh@lcahlaw.com>
**Subject:** RE: invoices

Rebecca,

Have you spoken to your client about the retainer requested by Alvey? Gentiva is prepared to split the retainer (approx.. $4,000 each) to move this project forward.

MARK K. CAMERON | ATTORNEY

mcameron@fridayfirm.com | Direct: (501) 370-1578 | Fax (501) 244-5379

3350 S. Pinnacle Hills Pkwy, Suite 301

Rogers, Arkansas 72758 | www.FridayFirm.com

This e-mail message and any attachments contain confidential information that may be legally privileged. If you are not the intended recipient, you must not review, retransmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it. If you have received this e-mail in error, please immediately notify us by return e-mail or by telephone at 501-370-1578 and delete this e-mail. Please note that if this e-mail contains a forwarded message or is a reply to a prior message, some or all of the contents of this message or any attachments may not have been produced by Friday, Eldredge & Clark, LLP. Receipt of e-mail does not establish an attorney-client relationship.

**From:** Alvey Matlock (Guardian Forensics) <alvey@guardian-forensics.com>
**Sent:** Tuesday, August 25, 2026 9:02 AM
**To:** Rebecca Hattabaugh <rhattabaugh@lcahlaw.com>
**Cc:** Mark K. Cameron <mcameron@fridayfirm.com>
**Subject:** Re: invoices

**CAUTION: External Email**

Rebecca,

I believe it is important to clarify the scope of Guardian's work to date, particularly because forensic analysis and preparation of a findings report were not authorized to conduct a forensic data-exfiltration analysis or prepare expert findings report until our conference last week.

The work performed before that authorization was directed toward collection and preservation of the laptop, USB devices and Microsoft account; processing the evidence; executing the parties' agreed protocol and approximately 5,000 search terms; refining the resulting data; and producing information for counsel's review. Accordingly, there is not yet an expert report because an analysis and report had not previously been requested or authorized.

Now that the parties have requested analysis, I agree that the examination should be focused on the identified Gentiva files and data exfiltration analysis. The analysis will determine which responsive files exist on the laptop, OneDrive account and USB devices and examine the available forensic artifacts to determine when those files were accessed, modified, synchronized, copied, deleted or transferred, including whether evidence identifies another destination which is requested in paragraph 2 of the protocol.

For budgeting purposes, I estimate 20 – 30 hours $7,500–$9,000 in additional professional fees to complete this focused analysis and prepare a written findings report. This is consistent with the scope and complexity of a data-exfiltration examination involving a computer, cloud account and external storage devices.

The analysis work started yesterday (August 24, 2026) and has four hours commented to it thus far.

I had rearranged my existing schedule to accommodate approximately 2.5 to 3 days of analysis following last week's authorization. Given the request to hold further work pending approval of the anticipated costs, I will return my attention to other previously scheduled engagements

and retained matters for approximately the next three weeks. All outstanding invoices for work performed to date will need to be brought current, and a retainer will be required before any additional forensic analysis or reporting work moves forward. Once those items are addressed and both parties approve the scope and budget, I can provide the next available dates for completing the examination.

Respectfully,

**Alvey Matlock**
Principal Consultant, Digital Forensics Expert
Guardian Forensics, Unlocking The Truth
Civil | Criminal | Corporate Investigations

(479) 926-4340 | 1(800) 403-0442
alvey@guardian-forensics.com
www.guardian-forensics.com

"PRIVILEGED & CONFIDENTIAL: This e-mail is intended only for the person or entity to whom it is directed. It may contain information that is Protected Work Product, attorney/client privileged, confidential or exempt from disclosure. Dissemination or copying of this e-mail other than by the intended recipient or its duly designated employee or agent is prohibited. If you are not the intended recipient, please notify us immediately and permanently delete this e-mail and any attachments.

On Mon, Aug 24, 2026 at 9:00 PM Rebecca Hattabaugh <rhattabaugh@lcahlaw.com> wrote:

> Alvey,
>
> I believe that I received the initial invoice in this matter in excess of $4000 which was then at my request split. My client paid approximately $2000 of the first invoice received. As I understand it, the last invoices sent indicate that an additional $7000 plus has been incurred or around $11,000 total.
>
> At this point, we do not have a report. The scope of this review as I understood it was to locate approximately 3000 files which we are pretty confident are on the laptop or OneDrive account so that they can be deleted and to see if there is any evidence of whether those particular 3000 files were manipulated in any way or transferred after they were downloaded to the OneDrive in March of 2025.

My client did not anticipate we would be $11,000 into the process and still not have the answers to these questions. We were under the impression that this would be a pretty limited review that she might be in a position to afford.

It seems like this is taking much longer and that may well be a flaw in the instructions you were provided rather than any issue on your part. However, at this point, because we are already far past what I had projected the cost of this project to be, I would like to ask for you to provide me with an estimate of the cost to conclude it as you have recommended. I am not sure my client can afford to continue to front these costs at the rate that we are going so that her former employer can be satisfied that she has not transferred any documents which was supposed to be the point of this review.

As far as your recent questions regarding her husband's employment and name. His name is Matt. Same last name. His work documents that came up as hits on your report may have been associated with customers rather than his employer so I am not sure I can disclose the particularities of the documents that were clearly not related to the 3000 files at issue. In any event, I remain concerned that I am reporting what we know we can exclude rather than focusing the exam on the files at issue at issue which has been one of my concerns all along. I think the key word search rather than looking for the particular files will continue to be a problem in what we are spending on this project. It is my understanding that Mark's client had tracking software in place so that we know those 3000 files are the only files at issue and we should not be searching for anything else.

Please provide an estimate of further costs before proceeding any further with your examination so I can let my client know what we can expect in terms of your billing for this project.

Thanks,

Rebecca

---

**From:** Alvey Matlock (Guardian Forensics) <alvey@guardian-forensics.com>
**Date:** Tuesday, August 18, 2026 at 2:30 PM
**To:** Rebecca Hattabaugh <rhattabaugh@lcahlaw.com>, Mark K. Cameron <mcameron@fridayfirm.com>
**Subject:** invoices

Rebecca and Mark,

The initial invoice for this matter was opened under Mark's law firm in May. Since then, there have been two invoices covering the work performed over approximately the last three to four months.

I have divided the outstanding fees between the two law firms, and the respective invoices were sent by email today.

Please let me know if you have any questions regarding the allocation of the fees, invoice details, or work performed.

Regards,

**Alvey Matlock**
Principal Consultant, Digital Forensics Expert
Guardian Forensics, Unlocking The Truth
Civil | Criminal | Corporate Investigations

(479) 926-4340 | 1(800) 403-0442
alvey@guardian-forensics.com
www.guardian-forensics.com



"PRIVILEGED & CONFIDENTIAL: This e-mail is intended only for the person or entity to whom it is directed. It may contain information that is Protected Work Product, attorney/client privileged, confidential or exempt from disclosure. Dissemination or copying of this e-mail other than by the intended recipient or its duly designated employee or agent is prohibited. If you are not the intended recipient, please notify us immediately and permanently delete this e-mail and any attachments.