IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS

CURO HEALTH SERVICES, LLC
d/b/a GENTIVA

PLAINTIFF/COUNTER-DEFENDANT

v. CASE NO. 2:25-cv-02028-DCF

DEBRA SOBOLEWSKI

DEFENDANT/COUNTER-PLAINTIFF

---

**DEPOSITION OF JULIE WALLER**

Taken Thursday, June 4, 2026

commencing at 9:03 a.m.

3350 South Pinnacle Hills Parkway, Suite 301

Rogers, Arkansas

---

REPORTED BY: SHEILA ALEXANDER, CCR
Certified Court Reporter



**EXHIBIT "B"**

## APPEARANCES

ON BEHALF OF THE PLAINTIFF:

MR. MICHAEL S. MOORE
MR. MARK CAMERON
Friday, Eldredge & Clark, LLP
400 West Capitol Avenue, Suite 2000
Little Rock, Arkansas 72201-3522
(501) 376-2011
mmoore@fridayfirm.com
mcameron@fridayfirm.com

ON BEHALF OF THE DEFENDANT:

MS. REBECCA D. HATTABAUGH
Ledbetter, Cogbill, Arnold & Harrison, LLP
622 Parker Avenue
P.O. Box 185
Fort Smith, Arkansas 72902-0185
(479) 782-7294
rhattabaugh@lcahlaw.com

Also Present:
Ms. Debbie Sobolewski



**EXHIBIT "B"**

Q. And you made some determinations and recommendations as a result of your investigation; is that correct?
A. Not correct. I was simply collecting information. I was not a decision-maker. I was not making recommendations.
Q. Okay. I have recently just this week been provided some supplemental discovery -- I don't know, was that Friday? It might have been Friday. Sorry. I don't want to misconstrue.
I believe last Friday I was provided with some supplemental discovery responses in which there were a list of, I would say, evidence that you compiled. And at the top of that list, there were things that said, "Substantiated," "Unsubstantiated."
Did you make the determination that that particular complaint was substantiated or unsubstantiated?
A. I did in discussion with others, not on my own.
Q. Okay. Were you the person who made the decision to terminate my client's employment?
A. No.
Q. Who made that decision?
A. Our chief legal officer and our chief financial officer.
Q. Okay. Who is the chief financial officer?
A. Thomas Dolan.



**EXHIBIT "B"**

Q. And the chief legal officer was Mr. Lazas; correct?
A. Correct.
Q. Prior to the investigation of my client in October of 2024, had you ever been involved in any disciplinary action concerning my client?
A. Not disciplinary action, no.
Q. Are you aware of there being any prior disciplinary action related to my client?
A. I'm aware that there were concerns along the way, yes, but I was not involved with...
MS. HATTABAUGH: Strike that. Nonresponsive.
Q. (Ms. Hattabaugh continued.) My question was: Are you aware of any disciplinary actions that were made against my client?
A. I'm not aware.
Q. So you indicated that there was some concerns that were expressed.
A. Yes.
Q. Were they expressed to HR?
A. Yes, some of them.
Q. Were they -- were you involved in the decision about whether to investigate those concerns?
A. I was -- one of the situations, I was involved in, and I reported it. I was Debbie's HR partner, with our



**EXHIBIT "B"**

Q. Who conducted the interview of Elizabeth Mills if it wasn't HR?
A. A paralegal.
Q. A paralegal employed by whom?
A. Our legal department.
Q. So your legal department was aware of this.
A. Yes.
Q. Same legal department that made the decision to terminate my client.
A. Looks like different members of the legal department. So I don't know if the decision-maker, Ron Lazas, was aware of this particular situation.
Q. Where do you see that it was sent from a paralegal? Because I didn't see --
A. If you look at --
Q. Would it be the page before?
A. Like on -- if you go to page 169. Karen Allegrati, who's saying "I spoke with Elizabeth Mills" on November 28th. She's corresponding with Scott Wandstrat --
Q. Okay.
A. -- who forwarded it to her, 'cause it looks like the initial complaint maybe had gone to our CEO.
Q. And you said you weren't aware of it until -- the HR department was not aware until when?