**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| CURO HEALTH SERVICES, LLC d/b/a GENTIVA, Plaintiff/Counter-Defendant, | ) | |
| vs. | ) | CASE NO.: 2:25-cv-02028-TLB |
| DEBRA SOBOLEWSKI, Defendant/Counter-Plaintiff. | ) | |

**MEMORANDUM BRIEF IN SUPPORT OF RESPONSE TO PLAINTIFF'S MOTION TO QUASH AND/OR FOR A PROTECTIVE ORDER REGARDING DEFENDANT'S DEPOSITIONS NOTICES AND 30(B)(6) DEPOSITION NOTICE**

The primary argument that is advanced in Gentiva's Motion to Quash and/or For a Protective Order Regarding Defendant's Deposition Notices and 30(B)(6) Deposition Notice is that the Notices of Deposition should be quashed because they were untimely and asserting that Sobolewski has had ten months to conduct discovery and failed to complete it in a timely manner. Notwithstanding these assertions, the parties have filed a Joint Motion prepared by counsel for Gentiva requesting a continuance of the trial setting asserting that the parties have engaged in extensive discovery. With the filing of the Joint Motion for Continuance which has now been granted, the primary basis for the Motion to Quash is moot.

## BACKGROUND

Gentiva's argument is that the depositions were unilaterally noticed and that the Notices were untimely. The first assertion is factually incorrect and the second assertion concerning the asserted untimeliness of the Notices is not solely attributable to fault on the part of Sobolewski. The suggestion that Sobolewski has been dilatory in conducting discovery is without merit.

A Case Management Order was entered on October 23, 2025. Sobolewski propounded written discovery to Gentiva on December 30, 2025. Gentiva requested extensions to respond to the discovery and discovery responses were ultimately served on February 23, 2026. (See Exhibit “A”). Based upon the information received in those responses, Sobolewski requested the deposition of Julie Waller on April 16, 2026. That deposition was confirmed and went forward on June 4, 2026. (See Exhibit “A”).

In May of 2026, counsel for Gentiva suggested that the deadline to make expert disclosures should be pushed back and also suggested postponing the scheduled depositions of Ms. Waller and Sobolewski in light of the fact that the Court had not yet ruled on the pending Motion to Amend. Counsel for Sobolewski responded that she wanted to proceed with the scheduled deposition of Ms. Waller because it was likely that other depositions would be needed and with her schedule it would be difficult to get those depositions concluded within the discovery deadline if the deposition were postponed. (See Exhibit “A”).

The deposition of Julie Waller proceeded on June 4, but the expert witness disclosures deadline was extended to June 29, 2026. On June 29, 2026, Gentiva identified a forensic expert who had conducted an analysis of Sobolewski’s work computer after it was returned. Gentiva also identified its employee, Jeff Harris, as an expert witness as to Gentiva’s information technology and security measures. Counsel for Sobolewski requested the deposition of the named forensic expert, Lance Watson, and that deposition was scheduled by agreement for August 5, 2026. During the deposition of Lance Watson, it was discovered that counsel for Sobolewski had not been provided with all of the documentation relied upon by Mr. Watson in forming his opinions and Gentiva subsequently submitted supplemental documentation and supplemental expert disclosures. Following that deposition, Sobolewski propounded additional written discovery.

On August 11, 2026, counsel for Sobolewski pointed out that discovery was soon coming to a close and suggested that the parties seek to extend the discovery deadlines and requested that Gentiva supplement its discovery responses to identify the specific witnesses who would be called at trial so that Sobolewski could make a final determination of which additional depositions needed to be scheduled. (See Exhibit "A"). Gentiva indicated that it would not agree to the requested extension and would call the 17 persons identified in its Initial Disclosures. (See Exhibit "A"). However, no information was provided in those Disclosures as to what the substance of the witnesses' testimony would be.

On August 19, 2026, Gentiva submitted Supplemental Expert Disclosures producing some additional documents which had been discussed during the deposition of its expert, Lance Watson, and again stating that Jeff Harris would be an expert witness with regard to certain information technology issues. On that same date, counsel for Sobolewski filed a Motion for Extension in the Discovery Deadline over the objection of Gentiva. The Motion for Extension was granted.

On August 28, 2026, counsel for Gentiva requested the deposition of Jeff Harris who had been identified as an expert witness and also served a 30(b)(6) notice addressing in part the issues that had come up during the deposition of the expert Lance Watson and also due to the fact that Gentiva had not provided information concerning the substance of its witness testimony in order to determine who from Gentiva would be testifying as to certain critical elements needed to establish his claims and defenses in this matter. The deposition was noticed for September 11, 2026. On August 31, 2026 counsel for Gentiva requested a good faith conference call about the 30(b)(6) Notice indicating that no witness could be produced by the deadline. Counsel for Sobolewski indicated that she was willing to reschedule the deposition and that the deposition could be conducted by Zoom in order to accommodate any witness who would be identified. (See

Exhibit "A"). Counsel for both parties made plans to attend a conference call on September 3, 2026. During that conference call counsel for Gentiva suggested that although they were considering how to address the issues raised in the 30(b)(6) Notice and might have objections, that there was some possibility that the case could be settled and that further litigation expenses should be avoided. For that reason, counsel for Gentiva suggested that an attempt be made to move up the scheduled settlement conference to a date within the near future and to push back any depositions after that date. During the conversation, Sobolewski's counsel stressed that although she was agreeable to conducting the settlement conference earlier and scheduling the depositions after the settlement conference, that dates would need to be provided so that the depositions could be concluded within the discovery deadline which was quickly approaching. Although the settlement conference was moved up to September 18, 2026, no deposition dates were provided by Gentiva for Mr. Harris or the 30(b)(6) deposition.

Because no deposition dates were received after the September 3, 2026 conference, counsel for Sobolewski again wrote to counsel for Gentiva on September 11, 2026 and in that correspondence again pointed out that the discovery deadline was quickly approaching and that she had not received any dates either for the 30(b)(6) Deposition or for Jeff Harris which we had agreed to schedule after the settlement conference and before the discovery deadline. In that same correspondence, counsel for Sobolewski also requested three additional depositions which she indicated would be brief and could be taken by Zoom. (See Exhibit "A"). The request for dates for all of these depositions was again ignored.

Precisely because no dates were provided for any of the depositions which had been requested and because the discovery deadline was quickly approaching, counsel for Sobolewski did send out Notices of Depositions for dates within the discovery deadline when the five

depositions requested could be conducted. Oddly enough, although Gentiva immediately stated that it intended to file Motions to Quash, primarily because of the late date of the Notices, Gentiva also took the position in its correspondence that there would be two additionally newly named witness who would be better to provide testimony than Jeff Harris, its designated expert on certain issues which are central to the case. Gentiva then indicated that supplemental expert disclosures would be provided which to date have not been. (See Exhibit "A").

Also, in Gentiva's Brief, there was a representation that Tom Dolan, who has been designated as a witness by Gentiva all along, potentially would be produced for deposition on October 2, 2026, within the existing discovery deadline. However, the same day the Motion was filed, counsel for Gentiva notified counsel for Sobolewski that although they had previously indicated Mr. Dolan could be available and we had agreed to the date of October 2, that he was no longer available for a deposition on that date. (See Exhibit "A").

The above recited history and attached evidence of communications between counsel on these issues clearly establishes that Sobolewski has not been dilatory in conducting discovery in this case. Gentiva takes a rather unique position in that the noticing of the depositions the Monday following the unsuccessful settlement conference on September 18, was untimely and the depositions should not be held for that reason while simultaneously refusing to provide dates for depositions and also that it should be allowed to identify two new expert witnesses, three days after the Notices were issued which Sobolewski would be precluded from deposing.

## ARGUMENT

### I. TO THE EXTENT THE MOTIONS TO QUASH ARE BASED UPON THE UNTIMELY NATURE OF THE SUBMISSION OF THE NOTICES, THE MOTION SHOULD BE DENIED.

Because the Joint Motion for Continuance has been granted in this matter, any objections to depositions being taken on the basis that the requests were not timely made should be denied. However, Sobolewski submits that counsel for Gentiva should now promptly provide dates for the depositions which were solely objected to on that basis. Tom Dolan was identified as a person who had information about the case in Gentiva's Initial Disclosures. He was also identified by Sobolewski. He was Sobolewski's immediate supervisor and was designated by Gentiva as the person who made the decision to terminate her employment. Gentiva had initially indicated that he would be produced for a deposition, but stated that the previously agreed to date of October 2, 2026 would not work. Now that the Motion for Continuance has been granted, Gentiva's Motion to Quash should be denied and Gentiva should provide dates immediately for when Mr. Dolan's deposition can be scheduled. If Gentiva refuses to do so, Sobolewski reserves the right to submit an additional Notice of Deposition for Mr. Dolan's deposition testimony.

Although Sobolewski has sought the deposition of Jeff Harris first by request on two occasions and then by Notice of Deposition served upon Gentiva, after the Notice of Deposition was served, Gentiva indicated that there may be two other persons who would be better qualified to provide testimony. At this point, however, Gentiva has not withdrawn Jeff Harris as a witness in this case and the current expert disclosures list him as an expert witness. No information about the two additional witnesses has been provided. In the event that Gentiva does intend to withdraw Jeff Harris as an expert witness, then Sobolewski will not seek his deposition and would agree to withdraw the Notice for his deposition. However, Sobolewski would request that Gentiva provide supplemental expert disclosures to identify the persons who it intends to call as expert witnesses in this matter and to provide the substance of their anticipated testimony pursuant to Rule 26.

Until that information is received, Sobolewski cannot withdraw the request and cannot complete the discovery that is required to get this case ready for trial.

Gentiva additionally makes the argument that the Notices of Deposition constitute improper requests for production of documents. In the two depositions conducted in this case thus far of Gentiva's witnesses, both witnesses had indicated at the depositions that they reviewed and relied upon documents that were not produced in advance of the depositions which makes the taking of the deposition extremely difficult on the party opponent. Because documents were not produced during its expert, Lance Watson's deposition, Gentiva filed supplemental expert disclosures identifying more documents. This obviously creates an undue burden and expense upon the party taking the depositions when they have to take multiple depositions occasioned by the fact that documents were not produced in advance. The documents at issue in these Notices were documents that had been previously requested in discovery in this case. Obviously documents that were relied upon by an expert witness in forming his opinions that he will assert at the trial of this matter are documents which should be turned over in advance of the deposition and were not. That is part of the reason that when these depositions were noticed, Sobolewski sought information that the witnesses reviewed or relied upon in order to form opinions or testify in this case. Because Jeff Harris was designated as an expert witness, Sobolewski sought documents which he relied or used to render his opinions in the case, documents generated by him with respect to the opinions that he expressed in the case, literature which he utilized in order to form those opinions, policies which address the information technology, electronic and cybersecurity safeguards and security measures which he was expected to testify about, and any documentation the existed pertaining to the specific measures which were taken to restrict Sobolewski's access or to prevent file transfer as well as documentation pertaining to Gentiva's monitoring, remote access, and investigation with

regard to her computer. All of these topics have been covered in requests for production that have already been propounded and responded to or likely objected to in this case. The reason for requesting that they be provided at the deposition is so that in the event there are additional documents which have not been provided or in the event that the witness relied upon particular documents which have been produced that they are available to the witness in giving his deposition testimony.

For the same reason with regard to the witnesses who are expected to testify with regard to Sobolewski's termination, Gentiva has already responded to requests for production in which Sobolewski sought all information and documentation pertinent to these issues. Sobolewski is really attempting to prevent a repeat of past situations in which the witnesses indicated that additional documents are or may be available which have not been provided and which would contain relevant information. In any event, Gentiva can certainly object to the providing of documents at a deposition without refusing to allow the deposition of identified witnesses and witnesses with relevant factual knowledge to go forward.

## II. THE DEPOSITIONS OF CAUSBY AND LAZAS ARE NOT PROHIBITED BY THE ATTORNEY-CLIENT PRIVILEGE AND FIRST HAND KNOWLEDGE IS NOT REQUIRED.

The fact that a witness is an executive or a lawyer does not prevent their deposition from being taken if they have specific factual knowledge or were involved in the termination decision. In this case, Julie Waller, Gentiva's Vice President of Human Resources testified that the decision-makers as it related to Sobolewski's termination was Ronald Lazas. (See Exhibit "B," pp. 43-44, 131). Sobolewski has to assume that the deposition testimony that Ms. Waller provided as a person who was conducting the actual investigation is truthful and that Mr. Lazas was the ultimate decision-maker as she testified. Gentiva cannot prevent Sobolewski from taking the deposition

of the ultimate decision-maker in this case merely because he is an attorney who works for Gentiva. If he made the decision or was involved in the decision, then the information that he has about it is extremely relevant to her claim that her contracts were breached and that she was wrongfully terminated. Further, the fact that he is an attorney does not protect information that was gathered by him and/or relied upon by him in making the business decision to terminate Sobolewski's employment. Ms. Waller testified that he did not have access to all of the documents that legal counsel, Mr. Lazas, would have had available to him in making the determination. She merely provided her investigative findings to him and he made the decision. Again, Sobolewski is entitled to know what the information is that he relied upon in making the decision and the fact that he is a lawyer does not prevent the discovery of clearly relevant evidence.

The party asserting the attorney-client privilege has the burden of proving its application. *Hollins v. Powell,* 773 F.2d 191, 196 (8th Cir. 1985). When in-house counsel is involved in business decisions, the fact that a legal issue can be identified does not shield the communications or documents from discovery. *In re: Vioxx Prods. Liab. Litig.,* 501 F. Supp. 789, 798 (E.D. La. 2007). There is no presumption that a company's communications with its counsel are privileged. *EEOC v. BDO USA, LLP,* 876 F.3d 690, 696 (F. 5th Cir. 2017).

> A prudent corporation will seek legal advice with respect to most corporate decisions, but the inclusion of general counsel does not transform all business decisions into privileged attorney-client communications.

*RBS Citizens, N.A. v. Husain*, 291 F.R.D. 209, 217 (N.D. Il. 2013); *citing Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S. Ct. 677, 66 L.Ed. 2nd 584 (1981).

Because in-house counsel's roles are often blurred, courts apply heightened scrutiny to assertions of privilege which involve corporate attorneys. *See United Ass'n. Nat'l Pension Fund v. Carvana Co.*, 2026 U.S. Dist. LEXIS 157303 (D. Ct. Az. 2026). In this case, Gentiva has taken the position that just because Ronald Lazas is an attorney who works for the corporation that any involvement

he had in the situation and any documents which he reviewed are privileged and protected from disclosure the attorney-client privilege. Gentiva has not met its burden in establishing that any such information is protected by that privilege.

With regard to David Causby, he is the CEO of the company and is ultimately responsible for the policies and procedures of Gentiva and decisions which relate to how its employees are treated. It is interesting to note that while Gentiva alleges that its own CEO cannot be deposed because he is a high level executive who would have no factual knowledge, Gentiva has sought to depose the CEO of the company for which Sobolewski now works. Apparently, believing that the CEO of that company would have personal and factual knowledge. The currently pending Motion to Quash the deposition of Owen Lawrie, the CEO of Uplift Hospice should obviously be granted if Gentiva's position is accepted. However, Sobolewski submits that the fact that a person is a CEO does not mean that they do not have factual knowledge or that they do not otherwise have relevant and discoverable information. In this case Sobolewski was a high level executive. She was a Vice President of the company. It is not unreasonable to believe that he might have factual knowledge about this particular termination. In addition, Sobolewski is seeking this deposition as it relates to the policies and practices of Gentiva of which Mr. Causby would presumably be one of the best persons to attest.

## III. THE NOTICE OF 30(B)(6) DEPOSITION SEEKS RELEVANT AND APPROPRIATE DISCOVERY.

Gentiva complains that providing evidence and testimony in response to the 30(b)(6) Deposition Notice would require Plaintiff to "effectively prepare for trial on its trade secret claim in a matter of days." Gentiva filed this trade secret and intellectual property claims in March of last year. To date, Gentiva has not identified the documents that it contends constitute trade secret or intellectual property within the 5,000 files at issue. In response to discovery, Gentiva has thus

far identified only 12 files although it indicated that it would supplement the response. Imagine Sobolewski's difficulty in preparing her case for trial when the company accusing her of misappropriating its trade secrets has thus far failed to even identify what information is entitled to those protections.

The topics addressed in the 30(b)(6) Notice are all information that has been sought in the written discovery exchanged in this case and thus far has not been identified. Gentiva has not disclosed any witness who will testify about trade secret or intellectual property. Had Gentiva identified the persons who were going to testify about these issues, Sobolewski would have simply requested the depositions of those individuals.

Topics 1-5 and 8-9.

The portions of the 30(b)(6) Notice relating to Gentiva's trade secret claims are all appropriate and are geared toward discovering the evidence which would potentially support those claims. In order to establish these claims, Gentiva has to establish certain elements. The fact that a file was stored on a work computer does not mean that it is entitled to trade secret or intellectual property protections. Gentiva is required to identify the documents that are entitled to that protection and describe what it is about them that makes the documents entitled to the protections under those acts. Gentiva is also required to establish what security measures it took to prevent the disclosures of the information. It is also required to establish that the information was not disclosed to a wide range of people because if it was it does not qualify under the federal or state acts under which Sobolewski has been sued. Gentiva now asserts that there are so many person within the company and outside the company who have this information that it cannot possibly identify all the persons who have access to the information. That in and of itself would appear to defeat the claims at issue. If Gentiva cannot even establish the persons who have access to the

information because those persons are too many to identify, it is not the type of information that is subject to these protections. Gentiva's position on this issue is that because all employees sign documentation that they will not share the information under the confidentiality provisions, that is some protection. That is not the type of adequate protection envisioned by the statutes.

In addition, Gentiva is attempting to compel an exhaustive examination of Sobolewski's personal computer that she shares with her husband on the theory that this information is so confidential, proprietary and of such value that the thousands of dollars expended by the parties to date and the thousands of dollars it contends need to be further expended on this issue is warranted to see whether they can develop evidence that the information was somehow transferred or disclosed. In the event that the information at issue is widely disseminated among its employees and persons outside the organization, then the exhaustive and extensive discovery that Gentiva seeks is completely unwarranted. For all of these reasons, Sobolewski has demanded throughout this litigation that Gentiva advise Sobolewski of the particular documents that are so sensitive and valuable to warrant the discovery that they seek and the damages which they contend that they have incurred. It has been Sobolewski's contention all along that much of the information is not trade secret or intellectual property and some of it is in fact publicly reported and readily available. It is certainly within the bounds of permissible discovery for her to request that Gentiva at a minimum identify the documents that it contends are entitled protection, the reasons they are entitled to protection and for those documents identify the person who have access to them.

Gentiva also argues that it cannot reasonably know all persons in the industry who know or could ascertain its trade secrets. That statement alone is yet another indication that the information is not trade secret or intellectual property. Gentiva does not explain why it is persisting in pursuing

causes of action when the number of persons who may have access to the information at issue appears to be virtually unlimited.

Topics 11-12.

Topic 11 to which Gentiva objects, Sobolewski has requested information concerning how it contends the intellectual property at issue was disclosed or used to its detriment. It is Gentiva's burden to establish that either Sobolewski used the information at issue to its detriment or that she disclosed it to other parties who have made use of the information in a way that has damaged Gentiva. To date, the only information that has been adduced and the only evidence that has been provided is that the files were downloaded to her personal OneDrive account, a fact which she has not disputed but has stated that any such transfer was inadvertent. The mere downloading of documents without use did not damage Gentiva. Sobolewski has stated that the information was not disclosed to anybody. Sobolewski has allowed forensic examination of her personal computer and has offered to delete all of the files and to allow someone to access all of her devices to ensure that she did not retain any copies of any Gentiva information. Gentiva has had no interest in that proposal. Instead, Gentiva wants to do a more in depth analysis of all of the documents, all e-mail accounts, and web browsing history contained on her personal computer in the hopes that it will find some evidence that she has made some use of these files. If Gentiva has no evidence that she misappropriated the files, it should not have filed the case. If it does have evidence that she misappropriated the files and that someone has used these files to their detriment, then they should be required to produce it at this late stage of the game.

Sobolewski has also sought evidence of the precise damages that Gentiva is claiming in this case. Sobolewski has previously propounded written discovery on these issues but not having received any responsive information included that topic in a 30(b)(6) Deposition Notice. Again,

if Gentiva does not have evidence of damages that it has incurred, apart from its allegation that it has incurred attorney's fees in prosecuting these claims, that it should simply state so.

Topic 14.

In Topic 14, Sobolewski sought information about prior lawsuits to claims that Gentiva has made for a similar basis against its employees or others including claims of misappropriation of trade secrets, intellectual property infringement and breach of confidential obligations. Information concerning Gentiva's efforts to protect its trade secret and intellectual property information is relevant to whether it has information that is protectible and whether it actually seeks to protect the information. In addition, Gentiva's Brief suggests that there are so many matters that it would be difficult for one person to be prepared to testify about them. If that is true and Gentiva has filed claims against many employees similarly situated to Sobolewski asserting such claims, that is relevant pattern or practice evidence and may indicate their motivation for filing this lawsuit was either harassment or an attempt to intimidate her from filing any claims of her own. In addition, Gentiva's counsel sent a letter to Sobolewski contending that the alleged transfer of files which is at issue allows them to avoid contractual obligations that Gentiva may have to her. In the event that Gentiva has prosecuted similar claims against similarly situated employees in an effort to avoid payment of compensation packages, that is clearly relevant motive evidence.

Topic 15.

This topic merely seeks information from Gentiva about all internal and external communications and investigations regarding the investigation into the alleged misappropriation, forensic analysis of her device, system and accounts, communications with law enforcement regarding the alleged misappropriation and findings and conclusions related to any of these

investigations. In the event any of the information is claimed to be attorney-client privilege, Sobolewski has requested a privilege log. The evidence to date has been that Gentiva, upon receiving Sobolewski's work issued laptop, conducted certain investigation and analysis upon it. The results of those investigations are clearly relevant and may exonerate Sobolewski as they may establish that the file transfer was actually inadvertent and that no further manipulation or transfer of files occurred. As Gentiva at all times had access to the laptop, it would also reflect any actions taken on the devices or on the systems that were being utilized by Sobolewski while it was in her possession. Gentiva threatened Sobolewski with civil and criminal prosecution and filed a civil lawsuit against her. If they have reported her to any law enforcement agency regarding this misappropriation, and if the law enforcement agency refused to prosecute, that would be relevant. Findings, conclusions and reports related to the investigation of the work computer at issue are clearly relevant.

Topics 22 to 25.

Sobolewski has only requested that specific policies and practices which were used to protect the information on her computer, which is clearly relevant and an appropriately limited topic of examination. Sobolewski has also requested information concerning all of the investigations that were performed and identification of the persons who were involved in the inspections. Sobolewski has also requested identification of any instances in which Gentiva remotely accessed her work computer or any of its files while it was in her possession. The access that Gentiva had to her computer and ability to control the computer, access the files and delete the files is clearly relevant to whether Gentiva had the ability to secure its information and whether it took reasonable measures to do so. For the same reason, Topic 25, identification of the software systems, devices

and agents, and mechanisms used to protect the files from being transferred is also relevant as it is evidence of a specific element Gentiva is required to prove.

## CONCLUSION

The evidence establishes that the reasons the depositions were noticed late was largely due to the fact that Gentiva has not provided adequate information in response to discovery, has refused to identify its witnesses, has refused to identify the evidence which will support its claims and defenses in this case, refused to respond to requests for deposition dates and Sobolewski is merely trying to employ all mechanisms available to her to obtain the information without a court order. Yet, here we are. Had Gentiva simply provided information in response to written discovery to address the topics, the 30(b)(6) deposition would be largely unnecessary and likely would not have been sought. Two of the Notices concern witnesses who were identified by Gentiva as witnesses in this matter. Sobolewski did request all of these depositions in the time period between August 28, and September 11 and Gentiva did not respond or provide any dates for those depositions to be taken. With only a few days left before discovery would close, Sobolewski had no choice but to notice the depositions in order to prompt some response. The five depositions which were noticed clearly sought relevant and discoverable information. The 30(b)(6) topics were reasonable and appropriate and sought information, most of which relate directly to evidence Gentiva will be required to establish if the case goes forward to trial. For all of these reasons there is no basis to quash the depositions and Gentiva's efforts to do so are nothing more than further attempts to delay discovery in this case. Accordingly, Sobolewski requests that the Court deny the pending Motion to Quash and/or For a Protective Order Regarding Defendant's Deposition Notices and 30(B)(6) Deposition Notice and for all other relief to which she may be entitled.

Respectfully submitted,

LEDBETTER, COGBILL,
ARNOLD & HARRISON, LLP
622 Parker Avenue
P.O. Box 185
Fort Smith, Arkansas 72902
Phone: (479) 782-7294
rhattabaugh@lcahlaw.com

BY: [signature]
REBECCA D. HATTABAUGH, ABA#96029
*Attorney for the Defendant/Counter-Plaintiff,*
*Debra Sobolewski*

**CERTIFICATE OF SERVICE**

I, Rebecca D. Hattabaugh, one of the attorneys for the Defendant/Counter-Plaintiff herein, do hereby certify that on October 21 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will electronically send notification of such filing to the following:

Mr. Mark Cameron
Mr. Michael S. Moore
Friday, Eldredge & Clark, LLP
400 West Capitol Ave., Suite 2000
Little Rock, AR 72201
mcameron@fridayfirm.com
mmoore@fridayfirm.com
*Attorneys for Plaintiff, Curo Health Services, LLC*
*d/b/a Gentiva*

[signature]
Rebecca D. Hattabaugh