**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF ARKANSAS**

| | | |
|---|---|---|
| CURO HEALTH SERVICES, LLC<br>d/b/a GENTIVA,<br>Plaintiff/Counter-Defendant,<br><br>vs.<br><br>DEBRA SOBOLEWSKI,<br>Defendant/Counter-Plaintiff. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | CASE NO.: 2:25-cv-02028-TLB |

**MEMORANDUM BRIEF IN SUPPORT OF**
**<u>RESPONSE TO PLAINTIFF'S MOTION TO COMPEL</u>**

Defendant/Counter-Plaintiff, Debra Sobolewski, (hereinafter "Sobolewski"), by and through her attorneys, Ledbetter, Cogbill, Arnold & Harrison, LLP, submits the following Memorandum Brief in Support of her Response to Plaintiff's Motion to Compel.

Curo Health Services, LLC d/b/a Gentiva (hereinafter "Gentiva") seeks additional forensic examination of Sobolewski's personal laptop and devices. The personal laptop is one that has been her possession for several years and one that is shared with her husband. Gentiva's initial concern expressed through the agreement that was reached between the parties and submitted to the Court on April 1, 2025, was that Gentiva sought to ensure that the files were going to be deleted from Sobolewski's devices. Sobolewski has never had any disagreement with this and has remained willing to do so. She offered to delete the files and/or to have a third party do so. From there, Gentiva has sought to expand the scope of inquiry to make sure the files were not transferred or otherwise manipulated. Initially, Sobolewski was willing to allow a limited review to be conducted to determine whether the particular files at issue were located on her personal laptop computer in any place other than the OneDrive account and to allow a limited search to see if the

files had been downloaded, transferred or manipulated in any way and to allow for the permanent deletion of the files from any of her devices. Sobolewski promptly handed over her computer to a third party, Guardian Forensics, for that purpose. For some reason, the scope of examination conducted turned out to be much broader and the parties have to date incurred in excess of $12,000 on this fishing expedition. Somehow, the scope of the review was broadened and has resulted in the laptop being searched not for the particular files at issue but also to include a complete analysis of her e-mail account, her husband's e-mail account, their web browsing history, all going back several years based upon search criteria that apparently was not the particular files at issue but were search terms included within those files.

The initial report received by Sobolewski's counsel included documents that were identified as file "hits" based upon the search protocol. The files took over 24 hours to download to Sobolewski's counsel's server, and not all of the files could be successfully downloaded. At that point Sobolewski's counsel was asked to review the files to determine if they were in any way privileged before the files could be shared with Gentiva's counsel. Upon attempting to review the files, counsel for Sobolewski quickly determined that it would take weeks to review the files in question and that many of the documents were personal documents which had nothing to do with Gentiva or the claims which have been asserted by it in this lawsuit. Although the parties have attempted to narrow the scope and refine the report, the data which is continuing to be analyzed is still not usable and contains many files that are not related in any way to the claims and which include her family's personal information. The next step of the process which Gentiva seeks to compel is to analyze the "hits" which have thus far been retrieved. Further, it is anticipated that this analysis will cost another $7,000 - $9,000. Sobolewski is not willing to continue to incur thousands of dollars of expense to analyze documents that are not related to the claims which have

been asserted. The parties have conferred multiple times on this issue and have exchanged numerous and lengthy e-mails on these issues and have been unable to reach agreement.

Sobolewski asserts that the scope of the review that has been proposed and has been performed to date is far beyond what was initially agreed to when the plan was presented to the Court shortly after filing and is beyond what is reasonable, necessary, or discoverable in the context of Gentiva's claims in this case. Because Gentiva was remotely monitoring Sobolewski's work laptop, it was immediately notified when the inadvertent transfer of files occurred. Gentiva immediately sent correspondence which was followed up within days by the filing of a federal lawsuit. Within days of the lawsuit filing, a temporary restraining order had been issued, the Gentiva laptop had been returned, and Sobolewski's counsel had consented to a plan to ensure the deletion of the files from her OneDrive account and her personal device. The parties announced their plan to the Court on April 1, 2025 which merely provided that Sobolewski had agreed to permit verification and inspection of her devices and cloud storage to ensure that the files at issue were deleted. (See Exhibit "A"). Sobolewski also agreed to share a link to the files that were located within the OneDrive account and believed to be the files at issue. That occurred again within a couple of days of the April 1 correspondence on April 3. On April 16, 2025, counsel for Sobolewski offered to delete the files or have a third party to do so. (See Exhibit "A").

Shortly thereafter counsel for Gentiva proposed that its own expert be allowed to review and inspect all of Sobolewski's personal devices to "confirm deletion" and requested that Sobolewski bear that expense. Thereafter on May 12, 2025, counsel for Gentiva then suggested that its expert not only needed to confirm deletion but also needed to access the computer because they wanted to preserve the computer activity that would confirm that the files did leave her OneDrive account. (See Exhibit "A"). At that point, counsel for Sobolewski became uncomfortable with the proposal

since clearly there would be attorney-client privileged data contained on her personal computer and lots of personal information belonging to Ms. Sobolewski and that such an unlimited and intrusive examination was not warranted. Counsel for Sobolewski for that reason suggested that the Court's guidance be sought about what was an appropriate scope of review based upon the claims asserted, the temporary restraining order which had been issued and Sobolewski's and counsels' agreement to ensure deletion of all information. (See Exhibit "A").

In response, counsel for Gentiva stated that they would not need to access any personal e-mail accounts. (See Exhibit "A"). In response, counsel for Sobolewski again suggested getting the Court's guidance on this issue about the scope of review which was now well beyond what had initially agreed upon, deletion of the files at issue as it included an inspection of all data on a personal computer which Sobolewski's counsel stated was not warranted or agreeable. On May 30, counsel for Sobolewski agreed to a limited review focused on identifying and deleting the company files and making sure that they were not backed up anywhere. Gentiva's counsel at that point wanted to add examining whether the files were transferred to any other device. A third party, Guardian Forensics was retained to review the computer for those limited purposes. (See Exhibit "A").

When the review was started, because many of the 5,000 files which had been transferred were actually personal documents of Sobolewski such as family photographs, marathon information, personal and family members' financial documents, personal medical information and coursework from classes that she had attended, Sobolewski took the time to identify the 2,000 files which she contended could be excluded from any search because they had nothing to do with Gentiva or this case and therefore any forensic analysis of those files would not be warranted. Part of the reason for trying to limit the scope of the review was to limit the time and expense involved

in the review as well as time spent by counsel in the review of any reports or documents produced. Sobolewski provided a list of file names to be excluded from the search including the specific file names for the personal files. Counsel for Gentiva complained about reviewing the files and that it was difficult to determine which documents related to the filenames. Thereafter counsel for Sobolewski created an index of personal documents with direct links to the documents themselves in an effort to aide Gentiva's counsel's review. (See Exhibit "A"). Sobolewski further agreed to the personal computer being imaged in the event there was any additional analysis was later agreed to by the parties or subsequently court ordered.

An agreed protocol was delivered to Guardian Forensics on June 16, 2026. Pursuant to the agreement, information initially developed was to be turned over to counsel for Sobolewski first to confirm that there were no non-discoverable or attorney-client privileged information was included. Upon learning that it took 24 hours to download the initial report and files at issue and upon attempting to access and review the files at issue, counsel for Sobolewski promptly advised Gentiva's counsel that the search results were far too broad and that the sheer volume of time it would take to review the information provided was unreasonable. (See Exhibit "A").

After the parties conferred, it was agreed that the scope was too broad and there needed to be an attempt to narrow the scope and a second report was delivered on June 19. After reviewing the files it was noted by defense counsel that there were 180,000 hits included in the report and that many of the "hits" were personal information including a large number of documents related to Sobolewski's husband's employment. (See Exhibit "A"). No explanation was provided as to why the search protocol resulted in files being identified in this search which were related to Sobolewski's husband or his work. He does not work for Gentiva.

Guardian Forensics then suggested using a small sample size to see if that would help narrow

the report focusing on 30 keywords. Even with the limited search terms, the resulting report which was shared on July 13, was again overly broad and again had many "hits" which were documents that were not in any way related to Gentiva. Thereafter, counsel for Sobolewski suggested that the existing protocol be scrapped and that the search be conducted for the actual files which were at issue which should be limited to approximately 3,000 files and defense counsel shared a link to the actual documents at issue that could be searched and analyzed. (See Exhibit "A").

On August 4, an e-mail was received from Guardian suggesting that rather than searching for the files at issue that the search attempt to eliminate the top search terms that generated the bulk of the nonresponsive "hits." Gentiva's counsel expressed that they were open to that approach. On August 4, Guardian reported that the refinement limiting to the 30 keywords and eliminating many of the common search terms had reduced the number of files for review to approximately 11,000 records which would need to reviewed which was a significant reduction from the almost 200,000 hits identified in the prior reports. The same day, Sobolewski's counsel responded that 10,000 files was still a large number of files to review when we know that there were at most 3,000 files which were actually transferred. (See Exhibit "A"). On August 5, a report was sent by Guardian that purported to narrow the search to identify only responsive documents. Sobolewski noted that the report still contained photos which were supposed to be excluded as the parties had agreed to exclude .jpeg files or image files from the report in order to try to narrow the scope. The resulting search still contained marathon results, amazon orders, and again many, many clearly unrelated personal family documents based upon the file names. (See Exhibit "A").

Another meeting was held between Guardian and counsel for the parties on August 18, 2026 concerning the breadth of the report and problems with it. In the meeting it was discussed that many of the items in the report continued to contain work documents related to Sobolewski's

husband. Clearly those files are not relevant to the issues in this case and Sobolewski's husband has an obligation to his employer to keep those documents confidential. After the meeting, counsel received bills for additional $3,500 in costs incurred by each party in receiving these reports and a suggestion that Sobolewski's husband's name and the name of his employer be provided so that those items could be excluded from the search report. In addition, Guardian sought an additional retainer of $4,000 per party for conducting the additional review. (See Exhibit "A").

Thereafter counsel for Sobolewski again thoroughly reviewed the information which had provided in the August report and drafted a lengthy e-mail to counsel for Gentiva explaining her issues with the process that was being utilized and concerns that the report would not contain usable data and had far exceeded the initial scope of review which was agreed upon. In that correspondence, counsel questioned whether Gentiva had reviewed the report in order to determine whether the search was netting any usable result and whether any further search was warranted. Counsel noted that there are many, many product images indicating on-line shopping history, downloads from recipe sites, research concerning a trip to the Grand Canyon and second grade reading comprehension worksheets which had been downloaded for their grandchildren, and e-mail attachments containing coupons. Sobolewski's counsel noted that the only e-mails identified that were sent by Sobolewski and identified as "hits" were e-mails to her husband about the litigation. The other e-mail "hits" which were identified were e-mails sent by her husband, to parties not related to Gentiva. There are also still a number of documents related to her husband's employment. The proposal now is for Guardian to continue its review as to attempt to exclude the husband's work documents but analyze the other data further. As much of the data did not have anything to do with Gentiva or the files identified in this case, the incurring of additional expenses

to analyze the files does not seem justified. As so many unrelated documents were found, it is anticipated that if there had been e-mails sending documents of Gentiva to anyone, that should have been discovered at this point and were not. In fact, there has been no information which would warrant any further investigation or analysis. There is evidence that some of the work files at issue in this lawsuit were downloaded to the OneDrive account. That is not new information. There appears to be no indication that the files were transferred or modified based upon the report.

It is Sobolewski's position that at this point the examination which is proposed is not going to result in any additional usable data, but more importantly, further intrusion and cost of examination is not warranted in this case. Not only will it cost the parties further expenses through payment of Guardian of the requested retainer, it will also result in counsel for Sobolewski expending a great deal of time and effort to review documents that based upon the filenames themselves appear to be clearly unrelated to this case. Then presumably, counsel would be required to review the documents and report to Gentiva about what the documents contain so that further discussion could be had about whether the documents should be produced or were discoverable. Although many of the unrelated documents are not necessarily attorney-client privileged, they are documents which would not otherwise be discoverable in the case.

It appears that the forensic examination at this point is nothing more than a fishing expedition. Gentiva has not provided any evidence that the files at issue have been used or disclosed to anyone. There has not been a single e-mail identified from any source that controverts Sobolewski's assertion that she did not use or disclose the files. The reports do not seem to suggest it. No e-mails have been identified where documents were sent by Sobolewski from her e-mail account. Although Sobolewski asserts that she never consented to her husband's e-mail accounts being searched or their web browser history being searched, that clearly has happened and it also

has not resulted in any "hits" pertinent to Gentiva. It appears that Gentiva's real objective here is to continue the search in order to drive Sobolewski's expenses up and in the hopes that it uncovers some information about something that Sobolewski has done that it can use in this litigation or in other litigation that it may intend to file against her in the future. Such an unwarranted and intrusive fishing expedition should simply not be permitted by this Court, nor should Sobolewski be expected to fund it. Gentiva's position appears to be that rather than carrying its own burden of proof that she used or disclosed the documents that the burden is now on Sobolewski to permit a free-for-all inspection of her personal devices to prove that she did not transfer the files. There has not been any evidence produced by Gentiva in this case that would justify such an intrusive, time-consuming and expensive investigation.

Proposed discovery must be "proportional to the needs of the case." *See* Fed. R. Civ. P. 26. The Court must determine whether the burden of expense outweighs the benefit. *See Paulman v. Jones*, 2022 U.S. Dist. LEXIS 93251 (E.D. Ark. 2022). Courts have noted that forensic imaging and examination of devices "in and of itself, raises privacy and confidentiality concerns." *UEC Holdings, Inc. v. Hatcher*, 2026 U.S. App. LEXIS 28531 (6th Cir. 2026); quoting *John B. v. Goetz*, 531 F.3d 448, 457, 460 (6th Cir. 2008). Such examination risks exposure of confidential and private information which is wholly unrelated to the litigation. *Id.* at 460. A request for forensic examination of a personal computer has been denied on the basis that good cause was not shown, and that the purported need for the search was based upon speculation. The court noted that the proposed examination of the hard drive at issue was an unnecessary intrusion into the private affairs of the family members. The court further noted that such privacy considerations were "highly relevant" to the court's determination of whether the examination was warranted. *Erar v. City of Andover*, 2005 U.S. Dist. LEXIS 55703, at 10 (Minn. D. Ct. 2005). Even with a protective

order, the court found that the exposure of personal business of family members was not warranted by the facts of the case. The court further noted that the passage of time meant that the computer trail was "too cold" to be of much use. *Id.* at 10. *See also In re: Ford Motor Co.*, 345 F. 3d 1315 (11th Cir. 2003)(holding that the federal rules do not permit unrestricted or direct access to electronically stored information and that the court is required to protect a party's records as well as the confidentiality of non-discoverable matters). *Id.* at 1317.

In this case, Gentiva has sought information about whether Sobolewski disclosed any Gentiva documents from Sobolewski and she has denied at all times that she did and has further stated that any transfer of files was inadvertent. She has promptly returned the laptop in question and immediately agreed to allow that the files be permanently deleted from any of her devices. She even offered to have a third party confirm and verify that the files were deleted and did not exist. It is interesting that Gentiva has to date never asked Sobolewski to delete the files in question while at the same time they are moving the Court to compel an exhaustive and intrusive examination of her personal computer. If Gentiva's interest was ensuring that the documents at issue not be transferred, it would seem that the first and paramount concern would be to ensure the deletion of the files. In this case, Gentiva has chosen to focus on trying to uncover some type of evidence of wrongdoing rather than securing the files at issue. Gentiva seeks this intrusive and costly discovery but has not yet identified any transfer of files or disclosure of information that would warrant any further examination. Further, with regard to the 3,000 files at issue, Gentiva has refused to narrow the list of files to only those which it contends contain trade secret or intellectual property information.

## CONCLUSION

For the above and foregoing reasons, Defendant/Counter-Plaintiff, Debra Sobolewski, respectfully requests that this Court deny the Plaintiff's Motion to Compel and for a determination as to whether any additional forensic examination of her personal devices is warranted or necessary. Alternatively, Sobolewski moves for a protective order to prevent any further forensic inspection of her personal devices. In the event that the Court determines that any additional investigation is warranted, Sobolewski requests that the investigation be limited to deleting and confirming deletion of the files at issue.

Respectfully submitted,

LEDBETTER, COGBILL,
ARNOLD & HARRISON, LLP
622 Parker Avenue
P.O. Box 185
Fort Smith, Arkansas 72902
Phone: (479) 782-7294
rhattabaugh@lcahlaw.com

BY: ______________________________
REBECCA D. HATTABAUGH, ABA#96029
*Attorney for the Defendant/Counter-Plaintiff,*
*Debra Sobolewski*

**CERTIFICATE OF SERVICE**

I, Rebecca D. Hattabaugh, one of the attorneys for the Defendant/Counter-Plaintiff herein, do hereby certify that on October 13, 2026, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will electronically send notification of such filing to the following:

Mr. Mark Cameron
Mr. Michael S. Moore
Friday, Eldredge & Clark, LLP
400 West Capitol Ave., Suite 2000
Little Rock, AR 72201
mcameron@fridayfirm.com
mmoore@fridayfirm.com
*Attorneys for Plaintiff, Curo Health Services, LLC d/b/a Gentiva*

Rebecca D. Hattabaugh